# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| DANEEN MITCHELL, on behalf of herself and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| VILLAS OF HOLLY BROOK SENIOR LIVING, LLC, | ) ) ) |
| Defendant. | ) ) |

Case No. 22-CV-2269

## <u>ORDER</u>

Plaintiff, Daneen Mitchell, on behalf of herself and others similarly situated, filed an Amended Class Action Complaint (#22) against Defendant, Villas of Holly Brook Senior Living, LLC, on February 2, 2023, alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 ("IWPCA") (the two Illinois statutes will be collectively known as the "Illinois Acts").  Plaintiff filed a Motion for Conditional Certification and Court-Supervised Notice to Putative Collective Members (#37) on October 2, 2023.  Defendant filed a Response (#48) on November 9, 2023, to which Plaintiff filed a Reply (#49) on November 16, 2023.  For the following reasons, Plaintiff's conditional certification and notice Motion (#37) is GRANTED.

## BACKGROUND

In considering a motion for conditional certification under § 216(b) of the FLSA, often before discovery has been conducted, the court may consider the allegations in the

complaint and affidavits submitted by the parties.  See *Iannotti v. Wood Group Mustang*, 603 F.Supp.3d 649, 653 (S.D. Ill. 2022); *McColley v. Casey's General Stores, Inc.*, 559 F.Supp.3d 771, 775 (N.D. Ind. 2021).

*Plaintiff's Amended Complaint*

<u>Overview</u>

Plaintiff and the putative collective/class members ("FLSA Collective") are those similarly situated persons who worked for Defendant at any time during the relevant time periods, and have not been paid for all hours worked nor the correct amount of overtime in violation of Illinois and federal law.  Defendant's regular practice was to require Plaintiff and the FLSA Collective to work through their unpaid meal breaks. Specifically, Defendant required them to clock out for 30 minutes to make it appear as though they received a break, even though Plaintiff and the FLSA Collective were not relieved of their job duties and regularly performed compensable work "off the clock" through their respective meal-period breaks.  Should they forget to clock out for at least 30 minutes, each shift, Defendant would apply a 30-minute deduction to their wages to make it appear as though Plaintiff or a FLSA Collective member received a meal break. The effect of Defendant's practice was that all compensable time worked by Plaintiff and the FLSA Collective was not counted and paid, thus Defendant failed to properly compensate them for all hours worked and has failed to properly compensate them for the proper amount of overtime under the FLSA.

<u>Parties</u>

Plaintiff was employed by Defendant in Illinois during the relevant time period. She did not receive compensation for all hours worked or the correct amount of

overtime compensation for all hours worked in excess of 40 hours per week.

The FLSA Collective are those current and former hourly patient-facing care providers who were employed by Defendant at any time from December 13, 2019, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff worked and was paid.

Defendant is a domestic limited liability company, licensed to do business in Illinois.

<u>Background Facts</u>

Defendant operates more than 30 assisted living facilities across Illinois, Florida, and Indiana.  To provide its services, Defendant employed numerous hourly workers, including Plaintiff and the FLSA Collective.  These workers were employed by Defendant as non-exempt, hourly patient-facing care providers who were not paid for time spent performing compensable work during their meal breaks.  Their job titles include: certified medical assistant, registered nurse, certified nurse assistant, and licensed practical nurse.

Defendant agreed, by contract, to pay each worker by the hour for every hour they worked on Defendant's behalf.  Their job duties primarily included assisting residents with their daily activities, such as changing clothes, eating, bathing, and walking.  While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work throughout Defendant's facilities.

Plaintiff was employed by Defendant in Washington, Illinois, from approximately October 2019 to October 2022.  Plaintiff and the FLSA Collective are similarly situated with respect to their job duties, pay structure, and the policies and

practices of Defendant, which Plaintiff alleges resulted in the FLSA and Illinois Acts violations. They are similarly situated with respect to their job duties, as they all assist residents on behalf of Defendant. They are similarly situated with respect to pay structure, in that they are all paid on an hourly basis and are required to work through their unpaid meal break. They are similarly situated with respect to Defendant's policies and practices, resulting in the complained of FLSA and Illinois Acts violations.

Plaintiff and the FLSA Collective were typically scheduled to work between 36 and 48 hours per week, referred to as "on the clock" hours. In addition to those hours, they worked between one and one-half to two and one-half hours "off the clock" per week and have not been compensated for that time. Defendant requires that they clock out for at least 30 minutes each shift for a meal break. Should they forget to clock out for their meal break during their shift, Defendant would automatically deduct one 30-minute meal period from their daily time.

Despite either requiring the workers to clock out for 30 minutes or automatically deducting 30 minutes of time from their daily time, Defendant does not completely relieve workers from duty during their shift for the purposes of taking their meal breaks. Defendant's policies require Plaintiff and the FLSA Collective to assist patients whenever a patient requests or needs assistance, even if on an unpaid meal break. They are prohibited from ignoring patients in need of help pursuant to Defendant's policies. They are required to perform duties, whether active or inactive, during all hours of their shift. Although clocked out, they are still required to monitor residents, assist residents when called upon, answer call lights or resident alerts, and perform whatever duties their managers require of them.

4

Due to these requirements, Plaintiff and the FLSA Collective were frequently unable to receive sufficient time to have an uninterrupted 30-minute meal break due to their constant patient calls and duties.  Due to staffing shortages, Plaintiff and the FLSA Collective were typically overloaded with patients, and as a result were rarely ever able to have 15 minutes to themselves between patient calls and work duties.  Indeed, some days they were so busy they did not even have time to punch out for their "fake" meal break.  Plaintiff alleges that when "that occurs, [Defendant] will make a deduction to their wages to continue their charade - that is to make it appear in the pay records as though Plaintiff and the FLSA Collective are receiving a meal break."

After work one day during the relevant time period, Plaintiff's supervisor, office manager Christy Campbell, asked Plaintiff why she had not clocked out during her shift for at least 30 minutes.  Plaintiff informed Campbell that she had been so busy all day she never had a chance to.  Campbell told Plaintiff that she was going to deduct 30-minutes from her wages because she had forgotten to clock out as required.  When Plaintiff protested and inquired why such a deduction had to be made when Plaintiff had been unable to take any break, Campbell responded that Defendant required a 30 minute deduction for each hourly employee's wages so that it "appeared" as though each hourly employee received a meal break, because if a deduction was not made, Defendant could get in regulatory trouble for not providing a meal break.

Plaintiff alleges that, instead of actually ensuring Plaintiff and the FLSA Collective were able to take a meal break, Defendant "simply fakes it," by making it appear on paper that the workers received a meal break by requiring them to clock out or by making a deduction to their wages.  Plaintiff alleges that Defendant was aware

that they regularly worked through their meal periods without pay, in violation of the FLSA and the Illinois Acts.

Plaintiff alleges that Defendant's systematic deduction of 30 minutes each day from Plaintiff's and the FLSA Collective's "on the clock" time resulted in their working straight time hours and overtime hours for which they were not compensated at the rates required by FLSA and the Illinois Acts. Specifically, when Plaintiff and the FLSA Collective worked three 12-hour shifts in a week and did not receive a meal break during any shift, Defendant's meal break policy resulted in their not being paid for one and one-half hours of compensable straight time work. Relatedly, when they worked four 12-hour shifts in a week and did not receive a meal break during any shift, the policy resulted in their not being paid for two hours of compensable overtime work. As a result of Defendant's failure to compensate Plaintiff and the FLSA Collective for compensable work performed "off the clock," they worked straight time and overtime hours for which they were not compensated at the rates required by the FLSA and the Illinois Acts.

Plaintiff alleges that Defendant knew or should have known that it was not compensating Plaintiff and the FLSA Collective for the proper amount of straight time and overtime compensation in violation of the FLSA, and that this caused financial injury to them. Plaintiff alleges that Defendant knew or should have known that either automatically deducting 30 minutes for a meal break or requiring Plaintiff and the FLSA Collective to clock out for a meal break, while it simultaneously caused and required them to perform during that time, did cause them financial injury.

Plaintiff further alleges that Defendant did not pay her or the FLSA Collective

time and a half for all hours worked in excess of 40 hours in a work week, and that Defendant's pay policies and practices violated the FLSA. Because Defendant did not pay them for straight time worked, those policies and practices violated the Illinois Acts.

<u>Causes of Action</u>

Count 1 of Plaintiff's Amended Complaint alleges that Defendant violated §§ 207 and 215(a)(2) of the FLSA by employing individuals in an enterprise engaged in commerce, the operation of a hospital, for work weeks longer than 40 hours without compensating such non-exempt employees for all the hours they worked in excess of 40 hours per week at rates at least one and one-half times the regular rates for which they were employed. Moreover, Plaintiff alleges, Defendant knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff the proper amount of overtime compensation for all hours worked over 40 each week, in violation of § 255(a) of the FLSA. Plaintiff alleges these actions were unreasonable and not in good faith.

Plaintiff also alleges a collective action pursuant to § 216(b) of the FLSA, on behalf of other of Defendant's employees similarly situated to Plaintiff with respect to the work they perform and the manner in which they were paid, who have also been victimized by Defendant's practices and policies in violation of the FLSA. Plaintiff alleges that Defendant's failure to pay Plaintiff and the FLSA Collective overtime compensation at the rates required by the FLSA results from generally applicable policies and practices of Defendant, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective. Plaintiff alleges that her experiences are typical of

7

the experiences of the FLSA Collective, and that all of the FLSA Collective, regardless of their specific job titles, precise job requirements, rates of pay, or job locations, are entitled to be properly compensated their overtime wages for all hours worked in excess of 40 each week.  Although damages may be individual in character, there is a common nucleus of operative fact, and absent a collective action, many members of the proposed FLSA Collective will likely not obtain redress of their injuries and Defendant will retain the proceeds of their violations.

Count 2 alleges violations of the Illinois Acts, and that Plaintiff and the FLSA Collective are non-exempt employees who Defendant agreed to pay for each hour worked, but that Defendant had a company-wide policy and practice of failing to pay them for each straight time and overtime hour worked.

As a result of Defendant's company-wide policy and practice, and its failure to pay the agreed-upon wages and overtime wages to Plaintiff and the FLSA Collective, Defendant violated the Illinois Acts.  Plaintiff alleges that she and the FLSA Collective meet the requirements for class certification on their Illinois Acts claims pursuant to Federal Rule of Civil Procedure 23.

*Affidavits*

The parties have attached affidavits to their filings, which may also be considered by the court in ruling on a § 216(b) conditional certification request.  See *Iannotti*, 603 F.Supp.3d at 653.

Plaintiff's Affidavits

**Plaintiff**

Plaintiff was employed as an activity director at Defendant's Washington,

Illinois, facility from October 2019 to October 2022.  She was paid by the hour at a rate of $17.00 per hour.  Her daily duties included preparing activities for the residents, monitoring residents while they engaged in activities, taking them to doctor's appointments, helping medical staff with residents, and charting.  She typically worked more than 40 hours a week and was required, as part of her employment, to work overtime hours on a regular basis.  She states that she knows her fellow hourly employees were also required to work overtime on a regular basis.

Plaintiff was required by Defendant to clock out for a meal break each day, even if she did not actually receive a full, undisturbed meal break.  Her supervisor, Angela Donavan, informed her and her coworkers that they were required to clock out each day for a meal break.  However, Plaintiff's unpaid meal breaks were often less than 20 minutes because they would be interrupted by residents who needed her help.  Even though Plaintiff told Donavan she was unable to take an uninterrupted break each day because of all of her job duties, Donavan did not correct her time and pay her for breaks that lasted 20 minutes or less.  No one at Defendant told her she could be paid for her uninterrupted breaks that lasted 20 minutes or less.  Plaintiff knows from talking with her coworkers that they also had their meal breaks regularly interrupted and were not paid for meal breaks that lasted 20 minutes or less.

Plaintiff states that Defendant required all hourly employees to take care of its residents whenever needed, and if employees received a resident alert through the walkie talkie, Defendant's policies required them to respond to the call or alert immediately.  Employees also always had to have their walkie talkies on them at all times, even during breaks.  Because Plaintiff had to help so many residents, she rarely

had time to take an undisturbed meal break.

Plaintiff knows that Defendant was aware that hourly employees had unpaid meal breaks of 20 minutes or less because they frequently complained about it to management. Plaintiff avers that Defendant subjected herself and her coworkers to the same or substantially similar policies discussed in her affidavit.

Plaintiff knows, based on her own experience and conversations with other hourly employees, that texting is the best way to reach them, and that they would be interested to learn that they could recover unpaid wages and overtime from Defendant and would want to join the lawsuit.

**Samantha Bullock**

Samantha Bullock was employed as a certified nursing assistant ("CNA") at Defendant's Pekin, Illinois, facility from February 2020 until July 2023. As a CNA she was paid hourly at rate of $17.00 an hour. She worked in the memory care unit, and her daily duties included helping residents with their daily activities such as bathing, eating, dressing, moving around, and going to the bathroom. She worked nights, and she and one other CNA typically managed 45 residents in the memory care unit on their own. She and her fellow hourly employees were required to work overtime hours on a regular basis.

She was required by Defendant to clock out for a meal break each day, even if she did not actually receive an undisturbed meal break. She told her facility director, Nicole Decker, that she could not take an uninterrupted meal break because it was not safe or even physically possible for the only other CNA alone to care for more than 40 memory care residents. Decker said she had to clock out regardless. Bullock's unpaid

meal breaks were often less than 20 minutes because they would be interrupted by residents or coworkers who needed her help. Defendant never corrected her time to pay her for interrupted breaks that lasted less than 20 minutes. No one at Defendant ever told her she could be paid for her interrupted breaks that lasted less than 20 minutes. Bullock states that she knows from talking with her coworkers that they also had their meal breaks regularly interrupted and were not paid for breaks that lasted less than 20 minutes.

Bullock repeats Plaintiff's allegations regarding Defendant's requirement that hourly employees take care of Defendant's residents whenever needed. Bullock also repeats the allegation that Defendant was aware that employees had unpaid meal breaks of 20 minutes or less due to complaints. Bullock also repeats Plaintiff's allegation that Defendant subjected her coworkers to the same or substantially similar policies, and that texting would be the best way to communicate with them.

**Justine Bregin**

Justine Bregin was employed as a resident assistant ("RA") at Defendant's Bloomington, Illinois, facility from January 2019 to August 2021. As an RA, she was paid by the hour at a rate of $13.00 an hour. Her daily duties included assisting residents with bathing, dressing, toileting, eating, charting, and passing out medications. She and her fellow hourly employees were required to work overtime hours on a regular basis.

Bregin was required to clock out for a meal breach each day, even if she did not actually receive an undisturbed meal break. These unpaid meal breaks were often less than 20 minutes because they would be interrupted by residents who needed her help.

No one at Defendant told her she could be paid for interrupted meal breaks that lasted 20 minutes or less. She knows from talking to her coworkers that they also had their meal breaks regularly interrupted and were not paid for breaks lasting 20 minutes or less.

The rest of her allegations mirror those made above.

**Tina Cornell**

Tina Cornell was employed as a licensed practical nurse ("LPN") at Defendant's Danville, Illinois, facility from May 2019 to June 2021. As an LPN she was paid hourly at a rate of $27.50 an hour. As an LPN, her daily duties included providing day to day care for residents by passing out and monitoring medication, and assisting the residents with their daily activities, such as showering, dressing, and feeding. She and her hourly coworkers were regularly required to work overtime.

Cornell was required by Defendant to clock out for a meal break each day, even if she did not receive a full undisturbed 30-minute meal break. Because she was the only nurse on staff at her location, and had to manage over 30 residents, Cornell rarely took a meal break and would typically eat at her desk while charting and monitoring residents. Initially, because she was working while eating, she did not clock out for a meal break. However, after a while, her head administrator, Ms. Glover, told her that she had to clock out for around 30 minutes each day for a meal break, even if she did not actually take a meal break, or else she would be in trouble.

Cornell told Glover that because she is the only nurse on staff, she did not have time to actually take a break. Glover told her to just clock out and keep working so it looks like she took a break. Cornell did so because she did not want to get in trouble.

12

Even though Glover knew Cornell was clocked out while continuing to work, she did not correct Cornell's time and pay her for the interrupted short breaks. No one at Defendant told her she could be paid for her interrupted breaks that lasted less than 20 minutes. Cornell knew that her coworkers were also required to clock out for a meal break each shift, and that they also had their breaks regularly interrupted and were not paid for meal breaks that lasted 20 minuted or less.

The rest of her allegations mirror those made in the other affidavits regarding Defendant's policies, knowledge of the violations, other coworkers being subjected to the policies, and preference for receiving information via text message.

**Andrea M. Crowder**

Andrea Crowder was employed at Defendant's Danville facility as a CNA from December 2020 to November 2021. As a CNA, she was an hourly employee paid at a rate of $17.80 per hour. Her duties were similar to that of CNA Bullock, and her allegations mirror those described above.

**Brooke Everette**

Brooke Everette worked as a CNA at Defendant's Bellevue, Illinois, facility, from March until July 2021. As a CNA, she was an hourly employee paid at a rate of $16.00 per hour. Her duties were similar to those of CNAs Crowder and Bullock. Like the other affiants, her meal breaks were often interrupted, and would last 20 minutes or less. Even though she informed her supervisors, they did not correct her time and pay her for breaks that lasted less than 20 minutes. Nobody in Defendant's employ told her she could be paid for interrupted breaks that lasted 20 minutes or less. Unlike some of the other affiants, Everette does not state that anyone in Defendant's management told

her to clock out as though she had an uninterrupted meal break even if she had been interrupted. The remainder of her affidavit is substantially similar to the others.

**Alexis Godbee**

Alexis Godbee was employed as an activities assistant ("AA") at Defendant's Washington facility from March to December 2019, and then as activities director ("AD") in the same facility from December 2019 until June 2020. She worked in both memory care units in her facility. As an AA and AD she was an hourly employee and paid at a rate of $12.53 an hour. As an AA, her daily duties included making plans for Defendant's residents, events, helping residents throughout the day, assisting in case of falls, and generally assisting medical staff in whatever they may need. As AD her duties were largely the same but included planning and supervising duties as well. The remainder of her affidavit mirrors the others described above.

**Annie Grimm**

Annie Grimm was employed as an RA at Defendant's Savoy, Illinois, facility from July 2022 to December 2022. As an RA she was an hourly employee paid at a rate of $13.00 an hour. Her duties were similar to those of RA Bregin. Her affidavit mirrors that of Bregin.

**Alyssa Johnson**

Alyssa Johnson was employed as an RA at Defendant's Harrisburg, Illinois, facility from April 2019 to January 2020. As an RA she was an hourly employee paid at a rate of $9.00 an hour. Her duties were similar to those of RAs Bregin and Grimm. Her affidavit mirrors those of Bregin and Grimm.

**Tiffany Stevens**

14

Tiffany Stevens was employed as an AA at Defendant's Harrisburg facility from April 2020 to June 2021. As an AA she was an hourly employee and paid at a rate of $14.50 per hour. Her duties were the same as those of AA Godbee.

Her affidavit is similar to those of the others. It also includes allegations that she was required to clock out for a meal break each day, even if she did not receive a full undisturbed meal break. Her facility's administrator, Bonnie Mahan, informed all staff that they needed to clock out of a meal break each day. Although Stevens complained that it was impossible to take an undisturbed meal break each day because of how many residents needed help, Mahan said they still had to clock out.

Stevens estimates that 75% of her meal breaks were interrupted by residents who needed help. In most cases, she would return from her meal break and clock back in and go help, but if it was an emergency she would have to run to the resident and would not be able to clock in until after the emergency. On those occasions, Mahan would tell her to fix her time to reflect the time she spent helping the resident off the clock, however, Stevens knows from reviewing her pay stubs that Mahan never fixed her time and she was not paid for the time spent helping the residents who had an emergency during her meal break.

**Naomi Tullis**

Naomi Tullis was employed as an RA at Defendant's Harrisburg facility from February 2021 to October 2022. As an RA she was an hourly employee and paid at a rate of $17.00 an hour. Her duties were similar to those of the other RAs described above, and her affidavit mirrors theirs.

<u>Defendant's Affidavits</u>

15

Defendant has included seven affidavits of its own from its employees.

**Tonya Griffith**

Defendant included the affidavit of Tonya Griffith, Defendant's human resources director since 2017.  Griffith states that Plaintiff's proposed class would include approximately 3,748 individuals, holding 12 different job titles, working three different shifts, and reporting to 30 different supervisors.  Griffith discusses how different job titles require different job duties, and, depending on their different duties, an individual will respond to a resident's needs in different ways, if at all.  Griffith also discusses how the nature of an employee's work is also impacted by the shift they work.

Regarding Defendant's policy for non-exempt, hourly employees, Griffith states that Defendant requires such employees to be paid for all hours worked, including for the entire length of their meal breaks if they perform any work during such breaks.  The policy provides, however, that any and all work, however performed, must be recorded in Defendant's electronic timekeeping system, and failure to do so may subject an employee to discipline.  Griffith states Defendant's employees are trained on the system, and that to ensure they do not work off the clock, they are required to inform their supervisors of any discrepancies in their time cards prior to the end of their shifts or at the end of any pay periods.  They are trained that they are responsible for the accuracy of their time cards and for notifying Defendant of any discrepancies.  Defendant's policy expressly forbids working off the clock, and employees are encouraged to contact management if they have questions or concerns.  Defendant maintains an "open door" policy for reporting matters of concern, and employees are reminded of this policy by Defendant during their employ and in their training upon

hiring.

Regarding the meal break policy, Griffith states that Defendant's hourly employees were generally instructed to clock in when they started their shifts, before they began working, and clock out when they finished their shifts. The policy requires employees to take a meal break of at least 30 minutes and to accurately observe and report those periods by clocking in and out. The policy also requires employees to inform their supervisors if they know in advance that they will not be able to take the break, and if they were unable or prohibited from taking the break. There is no requirement for employees to have their radios on or respond to alerts during their breaks. They are trained and instructed to coordinate and schedule their breaks so that there is adequate staffing in the facility at all times.

Regarding Defendant's missed punch form policy, Griffith states that if an employee cannot take a full 30-minute lunch break, they must ensure that they were paid for the 30-minute, unpaid meal period by submitting a "missed punch form" or by verbally communicating with the facility's business manager or director, and Defendant will then verify the information and pay the employee. This policy is communicated to all new hires during their orientation, is explained in the Employee Handbook, and is periodically discussed with facility and regional directors, who are instructed to remind hourly employees about the policy.

Also attached to Griffith's affidavit are copies of missed punch forms submitted by Plaintiff and eight of the Plaintiff's affiants, indicating they submitted missed punch forms on certain dates and that they were not deducted a meal break on those dates.

**Lashonde Colbert**

17

Lashonde Colbert works as a CNA and resident care coordinator ("RCC") at Defendant's Danville facility.  In describing her duties as a CNA, Colbert's duties were similar to those of the CNAs who submitted affidavits in support of Plaintiff.

Colbert states that at her initial orientation, she learned Defendant's policy requires her to take one 30-minute meal break during her 8-hour shift and two 30 minute meal breaks during her 12-hour shifts.  While she was a CNA, her supervisor always reminded her during shifts to take her full 30-minute meal break.  In her current position as RCC, she reminds employees to take their uninterrupted 30-minute meal break.  Some employees she supervises have expressed concerns that they will need to interrupt their meal break to attend to residents who need assistance, but Colbert tells them not to interrupt their break and that she will attend the to resident.  When Colbert was a CNA, she was never instructed to skip a meal break.  She had her meal break interrupted only once, and that was her own choice to assist a resident.  She received pay for the extra time worked and was able to finish her meal break in full.

Colbert then discusses Defendant's "missed punch form."  She states that the missed punch form has always been available for employees who do not take their lunch breaks.  She learned how to fill out and submit the forms during her orientation and that they are readily available, short, and easy to complete.  She has never been discouraged from filling out the form, and does not know of any other employee who was.  She has also never worked "off the clock" and Defendant's policies prohibit it.

**Other Affidavits**

The five remaining affidavits are from: Sharold Plush, AD at the Charleston, Illinois, facility since February 2019; Alice Crabtree, LPN at the Harrisburg facility from

18

2016 to 2021 and again from July 2023; Jen Piper, CNA at the Washington, Illinois, facility from 2014 to present; Cecilia Mendez, RA at the Morton, Illinois, facility since 2022; and Shaeylen Blasdel, a CNA at Defendant's Pekin, Illinois, facility, since April 2021.

The duties listed by these affiants are comparable to the duties of Plaintiff's affiants who held the same positions. But that is where the similarities end. Unlike Plaintiff's affiants, Defendant's affiants experiences more closely resembles that of Colbert: They had all been informed of Defendant's missed punch form policy; they were aware of meal break practices at other of Defendant's facilities; some had never been interrupted during meal breaks, but for those who had it was only once and they received full pay and credit for the time worked; they were paid for all time worked; and they were not required to work overtime.

**Defendant's Handbook**

Defendant also attached a copy of its Handbook (#48-2). The meal break portion of the Handbook states the following.

The Company strives to provide a safe and healthy work environment and complies with all federal and state regulations regarding rest and meal periods. Please check with your supervisor regarding procedures and schedules for rest and meal breaks. The Company requests that employees accurately observe and record meal periods by clocking in/out.

Illinois: Meal breaks [of at least 20 minutes] are mandatory for all nonexempt employees who are scheduled or required to work a shift of at least 7.5 hours. Typically, your break will be scheduled for a reasonable time after you have started

your shift, but should not be scheduled more than five hours after your shift start.  If

you are scheduled to or anticipate working at least 7.5 continuous hours, you must

ensure you take a meal break. If you know in advance that you may not be able to take

your scheduled break or meal period, please let your supervisor know; in addition,

notify your supervisor if you were unable to or prohibited from taking a rest or meal

period at the soonest opportunity.

ANALYSIS

Plaintiff argues that conditional certification under § 216(b) of the FLSA should

be granted and that her proposed notice and dissemination process is appropriate and

tailored to effectuate the FLSA's broad remedial purpose.

*Conditional Certification*

Plaintiff argues that conditional certification of the FLSA Collective should be

granted because: (1) she has satisfied the minimal burdens of proof required at the

notice stage; and (2) potentially individualized issues will not prevent company-wide

conditional certification.

Defendant responds that Plaintiff has not met the standard to proceed

collectively under § 216(b) because she cannot demonstrate that Defendant has a

common policy or practice that violates the FLSA, nor can Plaintiff demonstrate that she

is similarly situated to other members of the FLSA Collective with respect to any

alleged violation of the FLSA.  Defendant also argues that Plaintiff offers no common

method of proving liability, rendering the proposed collective unmanageable.

In Reply, Plaintiff argues that the evidence it has provided in the form of the

affidavits and Amended Complaint are more than sufficient to warrant conditional

certification.  Plaintiff argues that Defendant is prematurely attempting to argue the *merits* of Plaintiff's claims, which is improper at the conditional certification stage, and should wait until a later stage of the proceedings when discovery has been conducted and the court may consider the claims on the merits.  To that end, Plaintiff argues that the existence of a written policy cannot defeat conditional certification, the court should exclude Defendant's proffered affidavits, Defendant's merits-based contradictory evidence cannot "override" that of Plaintiff, and Plaintiff's claims are streamlined, not individualized.

<u>Conditional Certification Standard</u>

"If an employer fails to pay sufficient wages to its employees, the FLSA allows employees to bring a collective action on behalf of themselves and 'other employees similarly situated.'" *Harwell-Payne v. Cudahy Place Senior Living, LLC*, 2022 WL 6195619, at *11 (E.D. Wis. Sept. 30, 2022).  "A FLSA collective action class differs from a Rule 23 class; members of a FLSA class 'must opt into the suit to be bound by the judgment or settlement in it, while in a class action governed by Rule 23(b)(3) (a class action seeking damages) they must opt out not to be bound.'" *Harwell-Payne*, 2022 WL 6195619, at *11, quoting *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013).

District courts have "wide discretion" in determining how such suits should proceed.  *Weil v. Metal Technologies, Inc.*, 925 F.3d 352, 357 (7th Cir. 2019).  However, in analyzing whether to conditionally certify a class, "the court must respect judicial neutrality and avoid even the appearance of endorsing the action's merits."  *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020).

"The Seventh Circuit has not identified a specific standard for certifying a

collective action under the FLSA." *Iannotti*, 603 F.Supp.3d at 653; *Richards v. Eli Lilly & Company*, 2024 WL 1283536, at *2 (S.D. Ind. Mar. 25, 2024). Still, while the Seventh Circuit has not established criteria for determining whether employees are "similarly situated" for "collective action" purposes, the majority of courts in this circuit have adopted a "two-step process" for determining whether an FLSA lawsuit should proceed as a collective action. *Van Note v. International Flavors & Fragrances Inc.*, 2024 WL 1994314, at *2 (C.D. Ill. May 2, 2024), citing *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 1043429, at *1 (N.D. Ill. Mar. 16, 2016); *Jirek v. AstraZeneca Pharmaceuticals LP*, 2024 WL 2207634, at *4 (N.D. Ill. May 14, 2024).

The purpose of conditional certification is to determine the size and contour of the group of employees who may become collective members and whether these potential members are similarly situated. *Van Note*, 2024 WL 1994314, at *2. This first step requires only a minimal showing that others in the potential class are similarly situated. *Van Note*, 2024 WL 1994314, at *2; *Iannotti*, 603 F.Supp.3d at 653 ("Therefore, at this early stage, courts apply a more lenient 'minimal showing' or 'modest factual showing' standard to determine whether the class is similarly situated."). As the parties at this stage have yet to engage in any discovery, Plaintiff need only make a modest factual showing sufficient to demonstrate that she and the FLSA Collective together were victims of a common policy or plan that violated the law. See *Van Note*, 2024 WL 1994314, at *2; *Richards*, 2024 WL 1283536, at *2. This "modest factual showing" is a lenient burden of proof and is often based only upon the pleadings and any affidavits submitted by the parties. *Iannotti*, 603 F.Supp.3d at 653. However, declarations, other documents, or deposition testimony can also support this modest factual showing. *Van*

*Note*, 2024 WL 1994314, at *2.

"A factual nexus that binds potential members of a collective action together is sufficient to meet this burden." *Iannotti*, 653 F.Supp.3d at 654. "If the plaintiff meets this standard, the court may conditionally certify the suit as a collective action and allow the plaintiff to send notice of the case to similarly situated employees who may then opt-in as plaintiffs." *Richards*, 2024 WL 1283536, at *2; *Iannotti*, 603 F.Supp.3d at 654 ("If the employees are found to be similarly situated, class members are given notice of the suit and an opportunity to opt-in.").

Significantly, at this initial stage, the court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant. *Van Note*, 2024 WL 1994314, at *2; *Iannotti*, 603 F.Supp.3d at 653. The court is not required to make any findings of fact with respect to contradictory evidence presented by the parties, nor does the court need to make any credibility determinations with respect to the evidence presented. *Richards*, 2024 WL 1283536, at *2. Therefore, where the parties' evidentiary submissions directly conflict, they will be resolved — for purposes of this order only — in the plaintiffs' favor. *Richards*, 2024 WL 1283536, at *2.

At the second step following discovery, the party opposing collective action typically moves to decertify the class, and the court reevaluates the conditional certification and determines whether there is sufficient similarity between the named and opt-in plaintiffs. *Richards*, 2024 WL 1283536, at *2; *Iannotti*, 603 F.Supp.3d at 654. At this stage, the court makes a more stringent, factual determination as to whether the members of the class are similarly situated. *Iannotti*, 603 F.Supp.3d at 654. "If there is

23

sufficient similarity, the matter may proceed to trial on a collective basis; if there is not, the court may revoke conditional certification or divide the class into subclasses." *Richards*, 2024 WL 1283536, at *2.

This is the approach advocated by Plaintiff.

Defendant, on the other hand, appears to argue for a more holistic, rigorous evidentiary approach, in which contradictory evidence, proffered by the defense at the conditional certification stage, is weighed against that proffered by the plaintiff. To be sure, some courts have adopted such an approach. In *Swales v. KLLM Transport Services, Inc.*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit rejected the lenient conditional certification process and held that district courts must "rigorously scrutinize" whether workers are similarly situated. The Sixth Circuit recently adopted a similarly more rigorous test in *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023).

This court agrees with the approach of the court in *Richards*, which declined the defendants' invitation to apply the Fifth Circuit's *Swales* framework or the more recently established version from the Sixth Circuit in *Clark*. As noted by the court in *Richards*, "[w]hen presented with the issue, other courts throughout the Seventh Circuit have refused to adopt *Swales* and/or *Clark* and have continued to adhere to the two-step approach." *Richards*, 2024 WL 1283536, at *3, citing *O'Neil v. Bloomin' Brands Inc.*, 2023 WL 8802826, at *3 n.2 (N.D. Ill. Dec. 19, 2023) (disagreeing with Defendants' claim that *Swales* and *Clark* show the "tide is shifting away from a two-stage approach to certification"); *Brant v. Schneider Nat'l Inc.*, 2023 WL 4042016, at *2 (E.D. Wis. May 4, 2023) (declining invitation to depart from the two-step process); *McColley*, 559

F.Supp.3d at 776 ("The FLSA certification two-step remains the dance of this circuit —
as least for the time being — and the court adheres to it.").

The court would further note that, while it is true that the Seventh Circuit has not
directly endorsed or adopted the two-step approach, the court of appeals did discuss
the analysis in the context of a mandamus action in *In re New Albertsons, Inc.*, 2021 WL
4028428 (7th Cir. Sept. 1, 2021). In that case, the petitioners filed a petition for a writ of
mandamus with the Seventh Circuit, asking the court of appeals to review the district
court's order granting the respondent's motion for conditional certification. The district
court, in granting conditional certification, had declined to permit discovery, declined
to credit the petitioners' evidence that the respondent was not similarly situated to most
of the FLSA Collective, and declinined their invitation to deviate from the two-step
process in light of the Fifth Circuit's decision in *Swales*. *New Albertsons*, 2021 WL
4028428, at *1. The petitioners argued that their mandamus petition was the only
practical means to challenge widespread use of the two-step procedure to conditionally
certify collective actions. *New Albertsons*, 2021 WL 4028428, at *1.

The Seventh Circuit began its analysis by noting that mandamus was a drastic
remedy, available only in the most extraordinary of circumstances, and to demonstrate
a clear right to the writ, "a litigant must show that the challenged order 'so far exceed[s]
the proper bounds of judicial discretion as to be legitimately considered usurpative in
character, or in violation of a clear and indisputable legal right, or, at the very least,
patently erroneous.'" *New Albertsons*, 2021 WL 4028428, at *2, quoting *In re
Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995). "Because mandamus is not
a substitute for an appeal, the terms 'clear abuse of discretion' or 'patent error' are not

synonymous with the type of ordinary error that would justify reversal in a direct appeal." *In re Ford Motor Co., Bridgestone/Firestone N. Am. Tire, LLC*, 344 F.3d 648, 651 (7th Cir. 2003).

The court noted that it has "repeatedly said that district courts have 'wide discretion to manage collective actions[,]'" and that "the two-step process followed by the district court is widely approved by other circuits and used in many district courts." *New Albertsons*, 2021 WL 4028428, at *2, quoting *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). The court concluded that "[i]n the absence of guidance or instruction from the Supreme Court, Congress, or this court on the proper procedure for certification of FLSA collective actions, [it could not] say that the district court's decision to conditionally certify a collective action was patently erroneous or outside the bounds of judicial discretion." *New Albertsons*, 2021 WL 4028428, at *2. The court further stated that the conditional certification and authorization of notice to others who may be similarly situated is a preliminary, non-final step that does not adjudicate any party's rights, and that the merits of the respondent's and other employees' claims (and whether they are similarly situated) could be litigated later. *New Albertsons*, 2021 WL 4028428, at *2. "And although petitioners say conditional certification will cause irreversible harm, the burdens on these defendants are not substantially different from discovery burdens or other incidental burdens of civil litigation." *New Albertsons*, 2021 WL 4028428, at *2.

Thus, in the absence of a Seventh Circuit case overruling this long-applied approach, the court finds no reason to depart from it, and now turns to the issue of whether the potential plaintiffs are "similarly situated" for purposes of conditionally

certifying the collective action.  See *Richards*, 2024 WL 1283536, at *3; *Van Note*, 2024 WL 1994314, at *3 n.3 ("Instead of using the two-step approach, Defendants urge the Court to apply a more rigorous approach like that adopted by the Sixth and Fifth Circuits. Because most courts have used the two-step approach, the Court will use that approach here." (citations omitted)).

   <u>Whether Plaintiff's Proposed Collective Action Should Be Conditionally Certified</u>

   In order to conditionally certify the class, Plaintiff must meet her burden of making a modest showing that a class of similarly situated individuals who were victims of a common policy or plan that violated the law exists.  See *Van Note*, 2024 WL 1994314, at *3.

   Plaintiff defines the FLSA Collective as:

> All current and former hourly patient facing care providers who worked for Villas of Holly Brook Senior Living, LLC, at any time from December 13, 2019, through the Final Disposition of this Matter ("FLSA Collective" or "FLSA Collective Members").

   Here, Plaintiff has alleged that Defendant had a common policy or practice of requiring its hourly employees, all of whom had as part of their duties a requirement to come to the assistance of residents whenever needed, to interrupt their mandatory 30-minute meal break if necessary to assist a resident.  Plaintiff has alleged that when this occurs, and employees work through the meal break, Defendant would still deduct the 30 minutes from their wages, to make it look as though the employees received the meal break so that Defendant would not get into regulatory trouble for failing to provide a meal break.  Even though the employees were working through their meal break and thus not actually receiving a meal break, Defendant would not compensate them for this work because they were officially "off the clock."  Thus, Plaintiff and the

FLSA Collective worked straight time and overtime hours for which they were not compensated at the rates required by the FLSA and Illinois Acts.

Plaintiff has submitted the affidavits of 11 patient-facing hourly employees, including herself, who worked for Defendant across seven locations in Illinois. Each affiant asserts that they were paid hourly by Defendant and required to assist residents whenever they were needed, including during their "off the clock" meal breaks. They all assert that they were not paid for interrupted meal breaks that lasted less than 20 minutes, and that no one from Defendant told them that they could be paid for such interrupted meal breaks. They all assert that they were required to work overtime hours each week.

All of the Plaintiff's affiants assert that they complained to management or supervisors at Defendant about not being paid for interrupted meal breaks lasting less than 20 minutes, and several were informed that they still had to punch out during that time as if they had received the required uninterrupted meal break. Several were told that the reason for doing so was so that Defendant did not get in regulatory trouble.

Having reviewed the filings of the parties, the court finds that Plaintiff has sufficiently demonstrated a factual nexus binding the potential Plaintiffs together as the victims of a common policy or plan that violated the law. See *Van Note*, 2024 WL1994314, at *3; *Lucas v. JJ's of Macomb, Inc.*, 2019 WL 993657, at *5 (C.D. Ill. Feb. 8, 2019). Meal breaks of 20 minutes or less are compensable under the FLSA. See *Jones v. C & D Technologies, Inc.*, 8 F.Supp.3d 1054, 1067 (S.D. Ind. 2014), citing 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry.... They must be counted as hours worked"). Specifically, at this

28

stage, Plaintiff has shown that, if ultimately proven, patient-facing hourly employees were victims of a common policy or practice where Defendant did not compensate them for meal breaks lasting 20 minutes or less, and told them to punch out anyway to make it appear as though they had received a full uninterrupted 30 minute meal break, in violation of the FLSA. Thus, the court finds that the Amended Complaint and Plaintiff's affidavits have satisfied the modest factual showing required to demonstrate, at this stage, that Defendant has violated the FLSA.

Defendant argues that Plaintiff has failed to meet her burden of showing a common policy or plan or that there are similarly situated individuals to her whose rights under the FLSA have been violated by that common policy or plan. The court will take each of those arguments in turn.

### Common Policy or Plan

Defendant first argues that Plaintiff cannot demonstrate that it has a common policy or practice that violates the FLSA. Defendant argues that Plaintiff cannot "point to any policy that is, on its face, unlawful." Specifically, Defendant cites to *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305-06 (D. Colo. 1998), for the proposition that a plaintiff must "produce such an 'unlawful policy,' meaning a directive or memorandum which states a policy that is, on its face, unlawful."

However, the absence of facially unlawful written policy, or the presence of a lawful official written policy, does not doom Plaintiff at the conditional certification stage. Again, "[a]t the notice/conditional certification stage, the Court does not determine the legality of Defendant's practice or evaluate the merits of the plaintiff's claim, but only determines whether the plaintiff has shown that he is similarly situated

to the putative class members with respect to the nature of the alleged violations."

*Jewell v. Aarons, Inc.*, 2012 WL 2477039, at *5.  The court in *Jewell*, when faced with a similar argument, stated:

> Defendant's contention that conditional certification should be denied because Defendant has a written policy that all non-exempt hourly associates working more than six hours a day are required to take a minimum thirty minute lunch break holds no water at this stage of the case. Nor does the corollary of this argument that violations of such a written policy must have necessarily resulted from isolated decisions by individual managers acting contrary to the express orders of their employer. Indeed, the existence of a formal policy of requiring employees to take a lunch break should not immunize the defendant where the plaintiffs have presented evidence that this policy was commonly violated *in practice*.

*Jewell*, 2012 WL 2477039, at *7 (emphasis added).

Defendant also argues that Plaintiff and the affiants unilaterally disregarded Defendant's lawful policies of the missed punch form or requiring employees to clock out for their meal breaks.  However, this argument fails for the reasons stated above in *Jewell*, as "the existence of a formal policy of requiring employees to take a lunch break should not immunize the defendant where the plaintiffs have presented evidence that this policy was commonly violated in practice."  *Jewell*, 2012 WL 2477039, at *7.

Further, as stated, at this stage the court is not weighing evidence or the credibility of Plaintiff and the FLSA Collective, such as whether or not they were aware of the missed punch form policy or their assertions that Defendant had knowledge of the alleged violations; nor is it even specifically considering opposing evidence presented by Defendant in the form its own affiants who state they were aware of and

would utilize the policy.  See *Van Note*, 2024 WL 1994314, at *2; *Iannotti*, 603 F.Supp.3d at 653.

Plaintiff is alleging, essentially, a payroll or payment practice that may not be consistent with the meal break and/or missed punch form policy included in the handbook.  See *Harwell-Payne*, 2022 WL 6195619, at *13.  Plaintiff is alleging that Defendant did not pay them for meal breaks lasting 20 minutes or less due to interruptions they were required to respond to, told them to punch out anyway and stay punched out for the sake of appearances, and did not inform them that they could be paid for these interrupted meal breaks lasting 20 minutes or less.  "What happened and how often it happened are individual, fact specific issues that are best addressed at the second step of the process, where the court reevaluates the conditions certification to determine whether there is sufficient similarity between the opt-in plaintiffs."  *Harwell-Payne*, 2022 WL 6195619, at *13, citing *Albertsons*, 2021 WL 4028428, at *1.

**Similarly Situated**

Defendant next argues that Plaintiff has not met her burden of making a factual showing that she is similarly situated to potential members of the FLSA Collective, in that the alleged violations in this case stem from Plaintiff and the affiants' "decentralized, discretionary decisions to disregard Defendant's missed punch form policies."  Defendant argues that Plaintiff cannot make the modest showing that the FLSA Collective is similarly situated because: (1) Plaintiff's affidavits lack personal knowledge and are limited to the affiants' unique, individualized experiences; (2) the

31

undisputed evidence shows that Plaintiff's and the affiants' allegations are limited to
their own experiences and do not apply to other potential FLSA Collective members;
and (3) Plaintiff has failed to show that she is similarly situated to the others in the
FLSA Collective regarding job positions, duties, or shifts.

First, concerning the affidavits' lack of personal knowledge about what was
happening in facilities other than their own apart from conversations they supposedly
had with employees at other facilities, and conclusory allegations about violations at
other facilities, the court acknowledges that Plaintiff's affidavits contain somewhat
"cookie-cutter" and conclusory assertions about alleged violations at facilities other
than the affiants' own.  However, "another word for 'allegations lifted from a complaint
and repeated verbatim in a declaration' is 'evidence,' and arguably weak evidence is
still evidence that the Court—again—may not weigh at this stage."  *Jirek*, 2024 WL
2207634, at *7, citing *Bergman v. Kindred Healthcare, Inc.*, 949 F.Supp.2d 852, 855-56 (N.D.
Ill. 2013).

The court would also note that although the sample size of seven facilities
represented by Plaintiff's affidavits is relatively small, this court has conditionally
certified a FLSA collective in a prior case involving just *two* locations, based on the
similarities between the facilities and the evidence presented by the plaintiff.  See *Lucas*,
2019 WL 993657, at *6.  Thus, although Defendant's arguments that Plaintiff's affidavits
are conclusory, lack personal knowledge, and contain identical "cookie cutter"
allegations that mirror the pleadings and other affidavits are well-taken, the court will

defer any sufficiency considerations until the second step. See *Jirek*, 2024 WL 2207634, at *7.

Next, as to "the undisputed evidence [that] shows that Plaintiff's and the affiants' allegations are limited to their own experiences and do not apply to potential FLSA Collective members[,]" Defendant relies entirely on comparisons between Plaintiff's allegations and Defendant's own affidavits that contradict Plaintiff's claims, and thus Defendant's argument is unavailing.

Again, "[a]t this stage, '[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'" *Van Note*, 2024 WL 1994314, at *4, quoting *Bergman*, 949 F.Supp.2d at 855-56 (citation omitted). "Reliance on defendant declarations is largely misplaced when the court analyzes certification under step one." *Richards*, 2024 WL 1283536, at *4. "Challenging the factual merits of the collective action in such a manner is properly addressed at the second certification step, when Defendants' opportunity to decertify the collective action will occur." *Richards*, 2024 WL 1283536, at *4. "The court is not required to make any findings of fact with respect to contradictory evidence presented by the parties nor does the court need to make any credibility determinations with respect to the evidence presented." *Richards*, 2024 WL 1283536, at *2. "Therefore, where the parties' evidentiary submissions directly conflict, they will be resolved — for purposes of this order only — in the plaintiffs' favor." *Richards*, 2024 WL 1283536, at *2.

Finally, with respect to Defendant's argument that Plaintiff and the FLSA

Collective are not similarly situated because they have different job duties, positions, or shifts, this argument must also fail. "Plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Ruffolo v. LaSalle Group, Inc.*, 2019 WL 978659, at *5 (N.D. Ill. Feb. 28, 2019); *Iannotti*, 603 F.Supp.3d at 654. "Further, '[p]otential plaintiffs need not be identically situated, only similarly situated.'" *Van Note*, 2024 WL 1994314, at *4, quoting *Briggs*, 2016 WL 1043429, at *2. As stated above, Plaintiff has made that showing with respect to herself and her affiants.

The court finds that Plaintiff has made the minimal showing that others in the potential class are similarly situated to her. See *Van Note*, 2024 WL 1994314, at *2. "Moreover, '[c]ourts apply the similarly situated requirement leniently, and typically conditionally certify a representative class.'" *Van Note*, 2024 WL 1994314, at *4, quoting *Lucas*, 2019 WL 993657, at *5. For this reason, although the court is cognizant of Defendant's objections to Plaintiff's efforts to sweep all hourly employees into a single category, the relatively thin substance of Plaintiff's and the FLSA Collective's affidavits, Defendant's missed punch form policy, and the affidavits offered by its own affiants, it finds those arguments better suited for the second step of the certification process when the parties will have developed a more fulsome evidentiary record and the court is better equipped to assess the final certification question. See *Jirek*, 2024 WL 2207634, at *8.

34

**Manageability**

Defendant also raises a manageability argument, arguing that Plaintiff has provided no common method of proving liability, rendering the proposed collective unmanageable. Defendant warns that courts have conditionally certified cases involving meal break policies only to later decertify those actions because individualized determinations predominate, and that this court should make the determination now to avoid incurring unnecessary expenditures. True enough, but the court *always* has the option to reconsider its certification ruling following the completion of discovery. See *Weil*, 925 F.3d at 357 ("Collective actions under the FLSA likewise permit courts to reconsider certification after discovery has been completed."). If circumstances so warrant, Defendant may move to decertify the collective and the court will take the issue up at that point. Moreover, although Defendant argues irreversible harm once the notice is issued and resources expended, the burden on Defendant is not substantially different from discovery burdens or other incidental burdens of civil litigation. See *New Albertsons*, 2021 WL 4028428, at *2.

Defendant also argues that Plaintiff has not met her burden of showing that she is similarly situated because she has not demonstrated that she could show through common evidence that the FLSA Collective performed compensable work during meal breaks without compensation. But again, this argument goes more toward "what happened and how often it happened," which are "fact specific issues that are best addressed at the second step of the process, where the court reevaluates the conditions

certification to determine where there is sufficient similarity between the opt-in plaintiffs."  See *Harwell-Payne*, 2022 WL 6195619, at *13; see also *Jirak v. Abbott Laboratories, Inc.*, 566 F.Supp.2d 845, 850 (N.D. Ill. 2008) ("Defendant's argument about dissimilarities in the class is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery.").

"The mere potential that individual issues may predominate after further discovery does not preclude conditional certification of the class[,]" and at this stage, Plaintiff has made the minimal showing necessary for conditional certification and notice to the potential class members.  See *Jirak*, 566 F.Supp.2d at 850.  "If it turns out that there is no uniform policy common to the class members who opt in, or that the class is 'hopelessly heterogenous,' [citation omitted], then the case will not be permitted to proceed as a collective action."  *Jirak*, 566 F.Supp.2d 850, quoting *Jonites v. Exelon Corp.*, 522 F.3d 721, 725 (7th Cir. 2008).

*Notice*

The court now turns to Plaintiff's proposed Notice and Consent to Join Form (#37-13).  "Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice."  *Van Note*, 2024 WL 1994314, at *5.  "The Court has both the power and the duty to ensure that the notice is fair and accurate, [but] that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary."  *Van Note*, 2024 WL 1994314, at *5.

36

"The Court has broad discretion regarding the details of a notice sent to potential opt-in plaintiffs[.]" *Van Note*, 2024 WL 1994314, at *5.

The court has reviewed the proposed Notice and Consent to Join Form. The court does not find fault with the form, although it should be updated to account for the proper date. There is also an insignificant typo identifying Defendant as "Holy Brook" under subsection 6. Further, Plaintiff is ordered to remove the case caption from the top of the Notice and replace it with her attorney's letterhead, although Plaintiff may still include the case number and title in her Notice. See *Lucas*, 2019 WL 993657, at *6.

One final point the court would note, the Notice is silent as to whether a potential plaintiff can choose not to join this lawsuit, and instead file their own suit against Defendant. Therefore, Plaintiff is ordered to add an option under subsection 4 or 5 alerting potential plaintiffs that, if they want different counsel, they may file their own lawsuit rather than opting into this suit. See *Van Note*, 2024 WL 1994314, at *7. Accordingly, the relevant subsection shall be modified to say: "[i]f you choose not to join in this lawsuit, you may file your own lawsuit using a separate attorney, if you prefer." See *Van Note*, 2024 WL 1994314, at *7.

Defendant raises one objection to Plaintiff's proposed Notice and Consent to Join form, in that notifications should not be sent out via text message to the potential FLSA Collective. However, "[a]uthorization of notice by text message is increasingly common[,]" and, "[f]urther, 'any moderate intrusion caused by such a text message [or email] is outweighed by the interest in apprising all potential class members of this

action.'" *Van Note*, 2024 WL 1994314, at *7, quoting *Dennis v. Greatland Home Health Services, Inc*., 438 F.Supp.3d 898, 902 (N.D. Ill. 2020). Accordingly, the court will allow the Notice to be sent by text message. See *Van Note*, 2024 WL 1994314, at *7; *Lucas*, 2019 WL 993657, at *6.

IT IS THEREFORE ORDERED:

(1)    Plaintiff's Motion for Conditional Certification and Court-Supervised Notice to Putative Collective Members (#37) is GRANTED. The court conditionally certifies a class of "All current and former hourly patient facing care providers who worked for Villas of Holly Brook Senior Living, LLC, at any time from December 13, 2019, through the Final Disposition of this Matter ('FLSA Collective' or 'FLSA Collective Members')." The court also approves Plaintiff's Notice and Consent Form (#37-13) with the modifications set forth above. Plaintiff proposed a schedule including deadlines in her attached Proposed Order (#37-14). The court declines to adopt that schedule in this Order. The parties may work out that issue with the magistrate judge.

(2)    The stay in this case is hereby LIFTED. This matter is referred to the magistrate judge for further proceedings in accordance with this Order.

ENTERED this 8th day of July, 2024.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE