**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| DANEEN MITCHELL, Individually and on behalf of all others similarly situated, | Case No. 2:22-CV-2269-CSB-EIL |
| Plaintiff, | Hon. Colin S. Bruce |
| v. | Mag. Eric I. Long |
| VILLAS OF HOLLY BROOK SENIOR LIVING, LLC, | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT AND RELEASE AGREEMENT**

Plaintiff Daneen Mitchell, individually and on behalf of all Opt-In Plaintiffs ("Plaintiffs"), and Villas of Holly Brook Senior Living, LLC ("Holly Brook" or "Defendant") (together, the "Parties"), have reached a settlement of Plaintiffs' claims against Defendant relating to alleged violations of the Fair Labor Standards Act ("FLSA") and Illinois state wage and hour law. Accordingly, Plaintiffs file this Unopposed Motion for Approval of the Settlement and Release Agreement (the "Agreement"), which is attached as Exhibit 1.

1. **Factual History**

On December 13, 2022, Daneen Mitchell ("Mitchell") filed a collective/class action lawsuit in the United States District Court for the Central District of Illinois, Urbana Division, styled *Mitchell v. Villas of Holly Brook Senior Living, LLC*, Case No. 12:22-cv-2269-CSB-EIL (the "Lawsuit"). On January 13, 2023, Defendant filed its Original Answer and Affirmative Defenses. *See* ECF No. 17. On February 2, 2023, Plaintiff filed an Amended Complaint, and the Parties subsequently agreed to stay the pending Lawsuit and toll the statute(s) of limitations to allow them to pursue early resolution. *See* ECF Nos. 22–23. To that end, the Parties exchanged relevant data to enable them to meaningfully negotiate on at mediation. The Parties originally agreed to attend mediation on September 7, 2023, but that

1

mediation was ultimately canceled because the Parties had widely divergent views of the case and its value. Although mediation did not occur, the Parties agreed to remain open to future settlement opportunities.

The Parties participated in their Rule 26(f) conference and prepared a report for filing with the Court addressing their discovery needs moving forward. *See* ECF No. 34. As highlighted in the Rule 26(f) report, the Parties disagreed about how discovery would be conducted moving forward. Defendant filed its opposed motion to bifurcate discovery, to which Plaintiff responded. *See* ECF Nos. 35–36, 42. Plaintiff also promptly moved for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) and Defendant filed its opposition briefing *See* ECF No. 37, 48–49. On July 8, 2024, the Court entered an order conditionally certifying a collective action and authorizing the sending of notice to the Putative Collective Members. After the close of the notice period, a total of 1,887 individuals had filed their written consent to join this action as party plaintiffs.

After the close of the notice period, Plaintiffs served written discovery on Defendant. Defendant responded to Plaintiffs' requests with responsive information and documents. Despite multiple conferral attempts, the Parties were unable to agree on a discovery protocol applicable to the conditionally certified collective. Defendant ultimately moved to compel discovery and have the court adopt its discovery plan. *See* ECF Nos. 170–71. It also and moved to continue certain deadlines. *See* ECF Nos. 168–69.

Before the Court ruled on the outstanding discovery issue, the Parties again conferred and agreed to participate in mediation. The Parties mediated in Chicago, Illinois, on May 19, 2025, with well-respected wage and hour mediator, Michael Russell. During mediation, the Parties reached an agreement in principle and subsequently worked together to draft the comprehensive agreement before this Court at Exhibit 1.  The Parties' Agreement represents a compromise and settlement of

highly disputed claims. The Agreement provides for relief to Plaintiffs and a release of all wage and hour claims for Defendant.

**2.    The Settlement**

    **A.    The Gross Settlement Amount**

The Parties have agreed to resolve this matter for the Gross Settlement Amount of Two Million Dollars, and Zero Cents ($2,000,000.00). *See* Ex. 1. at ¶ I.I. The Gross Settlement Amount includes: a total of $10,000.00 for Plaintiff Mitchell's Service Award; $800,000.00 for attorneys' fees and litigation expenses ("Collective Counsel Payment"); and expenses related to settlement administration. *Id.* The amount remaining from the Gross Settlement Amount after the above-described deductions will be the Net Settlement Amount. The Net Settlement Amount will be distributed to the Plaintiffs as follows: The Net Settlement Amount will be divided by the total number of workweeks applicable to the Plaintiffs, to create a weekly value. Each Plaintiff will then have their workweeks multiplied by the weekly value to determine their *pro rata* share of the Net Settlement Amount. *Id.* at III.D.ii.

    **B.    Distribution of Settlement Proceeds**

Within fourteen (14) days of the Effective Date, Defendant will fund the Gross Settlement Amount by depositing the money with the Settlement Administrator. *See id.* at ¶ III.G.ii. Defendant will also provide the Settlement Administrator an electronic database containing each Plaintiff's Data. No later than thirty (30) days after the Effective Date, the Settlement Administrator will issue the Settlement Notice Packets to the Plaintiffs. The Settlement Notice Packets will include the approved Notice of Settlement, Settlement Check, and applicable tax forms to all Plaintiffs. Each Plaintiff must cash their respective Settlement Check within sixty (60) days after it is mailed to them. *See id.* at ¶ III.F.vii. Any unclaimed amounts will be returned to Defendant.

## C. Released Claims

The Plaintiffs will release only their wage and hour claims described below. Specifically, the wage and hour claims subject to release include:

> All claims, rights, demands, liabilities, and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in any version of the complaints, including the Operative Complaint filed the in the Mitchell Lawsuit, all suits, actions, causes of action, claims, or demands for unpaid wages (including overtime wages, straight time, or gap time wages), damages, reimbursements, unpaid advances, civil and/or statutory penalties, liquidated damages, treble damages, punitive damages, multiple damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief in any way growing out of their work for any Defendant for any and all claims that were, are, or could have been asserted in the Lawsuit or that are based on or arise out of the facts alleged in any version of the complaints filed in the Lawsuit from the beginning of the December 13, 2019 through the Effective Date of the Agreement, including without limitation any claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and any corresponding claims under applicable state law including without limitation under the laws of the State of Illinois, including claims under the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act.

*See id.* at ¶ I.M. Additionally, Plaintiff Mitchell will execute a general release in exchange for her requested Service Award. *See id.* at ¶ Exhibit 1.

## D. Service Award to the Plaintiffs' Representative

In return for the risk incurred and the services rendered to the Plaintiffs and the execution of a general release, subject to Court approval, Plaintiff Mitchell seeks to be paid a Service Award in the amount of $10,000.00, in addition to her *pro rata* share of the Net Settlement Amount, for her initiation of the Lawsuit and her assistance in the litigation and settlement of the Lawsuit. *See id.* at ¶ I.H

## E. Settlement Claims Administration

The Parties have selected ILYM Group, Inc. ("ILYM") to serve as the Settlement Administrator. As a condition of appointment, ILYM will agree to be bound by the Agreement with respect to the performance of its duties and its compensation. *See id.* at ¶ III.E. The Settlement Administrator will have the authority to issue payments subject to the limitations and calculations set forth in the Agreement. Subject to Court approval, the Settlement Administrator will be paid out of

4

the Gross Settlement Amount for its reasonable fees and expenses of administration, including the cost of printing and mailing the Settlement Notice Packet(s). ILYM estimates that it will be able to administer the Settlement for approximately $14,000.00.

3.      **The Parties' Agreed Upon Settlement Should Be Approved.**

The standard for approval of a FLSA settlement is straightforward—that is, a settlement should be approved if it was reached as a result of contested litigation, and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *See Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Watt v. Fox Rest. Venture*, No. 17-2104, 2020 WL 9607045, at *1 (C.D. Ill. Feb. 21, 2020), *report and recommendation adopted*, No. 17-CV-02104, 2020 WL 9607051 (C.D. Ill. Mar. 13, 2020).

A.      **The Parties Reached the Settlement as a Result of Contested Litigation.**

The Agreement is the result of contested litigation, reached in the context of this Lawsuit. Plaintiff Mitchell maintains that Defendant was liable to the Plaintiffs for unpaid wages and overtime, and Defendant has consistently denied liability throughout the tenure of this Lawsuit and denies that this case is suitable for collective action treatment for trial or liability purposes. Plaintiff obtained conditional certification of a collective, obtained substantive discovery from Defendant on the issue of class certification, and designated an expert. When the Parties mediated on May 19, 2025, they were able to reach an agreement on behalf of the Plaintiffs currently before the Court. Despite their disagreement over the validity of the claims and defenses at issue, the Parties reached an agreement to fully resolve this matter during their mediation on May 19, 2025.

Opposing positions on the issue of liability is in essence the definition of "contested litigation." Despite each of the Parties' good faith belief that their respective positions were correct, the Parties recognized the potential benefits of settlement negotiations and agreed to attend formal mediation

and engage in both formal and informal discovery. Defendant produced information sufficient to allow Collective Counsel to create multiple damage models and the Parties came to an agreement to settle this Lawsuit. For these reasons, the Court should conclude that the proposed Agreement is the product of contested litigation.

      **B.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.**

The second part of the settlement approval inquiry focuses on two issues. First, is confirming the existence of a *bona fide* dispute between the Parties. The second involves a review of the reasonableness of the proposed settlement.

          **i.    A *bona fide* dispute exists.**

Plaintiff Mitchell alleged that Defendant violated the FLSA, as well as Illinois law, by failing to pay its health care providers for all hours worked and the proper amount of overtime. Plaintiff Mitchell alleged that she and the Plaintiffs were required to work "off-the-clock" each week without compensation, resulting in both unpaid overtime and unpaid straight time. Defendant denied Plaintiffs' allegations and asserted numerous defenses. Simply stated, a *bona fide* dispute has existed between the Parties throughout the pendency of this case. *Soto v. Wings 'R Us Romeoville, Inc.,* No. 15 C 10127, 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018) (concluding a *bona fide* dispute existed between the parties where defendant denied the material allegations of plaintiffs' claims and vigorously defended their position throughout the litigation).

          **ii.    The proposed Settlement is fair and reasonable.**

In determining whether a settlement is fair and reasonable, courts generally examine four factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) whether the value of immediate settlement outweigh the mere possibility of future relief after protracted litigation;

6

and (4) whether the settlement is deemed fair and reasonable by the Parties. *Soto*, 2018 WL 1875296, at *1. Each of these factors is satisfied in this matter.

### a. The Parties fairly and honestly negotiated the Settlement Agreement.

The Agreement was the product of arms' length negotiations among experienced counsel and was only reached after substantial arguments over the proper scope of the case and the validity of Plaintiffs' claims, and after the Parties participated in a formal, in-person mediation with a highly experienced wage and hour mediator.

### b. The ultimate outcome of the Litigation is uncertain.

As outlined above, the Parties disagree about the merits of Plaintiffs' claims. If the Litigation had continued, Plaintiffs would have faced obstacles and uncertainties, including the outcome of the rulings on Plaintiffs' anticipated motion for class certification, summary judgment motion(s) and any subsequent dispositive motion(s) filed by Defendant, and potentially a take-nothing verdict at trial. Furthermore, even if Plaintiffs ultimately prevailed on the issue of liability, Plaintiffs would need to prove the amount of damages that each similarly situated individual suffered.

### c. The value of the Agreement to the Plaintiffs is significant.

The benefit that the Plaintiffs will receive from the Agreement, compared to the amount they *could* have received if they prevailed after trial on the merits, is substantial. The calculation by which each Plaintiff's *pro rata* amount of the Net Settlement Fund will be determined is set forth in the Agreement. Ultimately, each Plaintiff is entitled to receive an actual cash value calculated based on their proportionate number of weeks worked during the Claim Period. Taking a simple average, each Plaintiff will receive a check for approximately $623.21.[1] This is an outstanding result as it constitutes

---

[1] This amount constitutes a flat average that does not account for the number of work weeks worked by each Plaintiff to determine their individual *pro rata* amount.

a large recovery based on the pre-mediation employment and hours worked data exchanged between the Parties and is more than fair and reasonable in light of the defenses raised by Defendant. *Soto*, 2018 WL 1875296, at *1 (approving settlement valued at 25% of the owed wages); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

### d. Collective Counsel and Collective Representative support the Agreement.

Collective Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses at issue and has ample evidence on which to base an informed assessment of the proposed Agreement. *See* Declaration of Clif Alexander, attached as Exhibit 2. Based on Collective Counsel's knowledge of the case and the applicable law, as well as their experience in similar wage and hour matters, Collective Counsel believes the Agreement is fair and reasonable. *Id.* This factor supports approval of the Agreement. *See Isby v. Bayh*, 75 F. 3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, Plaintiff Mitchell approved the terms of the Settlement. Ex. 1, 3.

In light of the foregoing, the Court should approve the Parties' proposed Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute.

4. **The Service Award Should Be Approved.**

The Service Award agreed to be paid to Plaintiff Mitchell should be approved. As the Northern District of Illinois has noted:

> 'Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.' . . . This is especially true in employment litigation. Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers.

*Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017 U.S. Dist. LEXIS 73816, at *5 (N.D. Ill. May 1, 2017) (approving service awards of $10,000 and $5,000) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts in the Seventh Circuit routinely approve service awards to the class representative that range from $5,000 to $25,000. *See Briggs v. PNC Fin. Servs. Grp.*, No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *6-7 (N.D. Ill. Nov. 29, 2016) (collecting cases).

Under the proposed Agreement, the Collective Representative seeks to be paid a Service Award in the amount of $10,000.00, for her execution of a general release and in recognition of her leadership role on behalf of the Plaintiffs. *See* Exhibit 2. Plaintiff Mitchell contributed significantly to the Lawsuit and, ultimately, made the proposed Agreement possible. Plaintiff Mitchell was willing to initiate the Lawsuit and include her name conspicuously on the caption of the case and has assisted Collective Counsel diligently throughout the Lawsuit. Plaintiff Mitchell has been in constant communication with Collective Counsel throughout this Litigation, and her assistance has been instrumental in pursuing this Litigation. As such, the $10,000.00 service award for Plaintiff Mitchell is warranted and should be approved.

5. **Collective Counsel's Fees and Costs Are Reasonable and Should Be Approved.**

The Settlement Agreement provides for the payment of attorneys' fees and costs to Collective Counsel in the amount of $800,000.00. This amount constitutes 40% of the Gross Settlement Fund, and attorneys' fee awards of 40% are regularly approved in the Seventh Circuit. The Seventh Circuit

has recognized that 'most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis" and that the "typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)).

The $800,000.00 amount is inclusive of litigation costs and expenses. The contract between Plaintiff Mitchell and Collective Counsel authorizes Collective Counsel to recover 40% of the Gross Settlement Fund and reimbursement of costs and litigation expenses. *See* Exhibit 2. To date, Anderson Alexander, PLLC has litigation expenses of approximately $65,000.00. *See id.* In truth, Collective Counsel seek to recover approximately 36% in fee in addition to recovering their litigation expenses.

The requested attorneys' fees do not detract from the Settlement Amount owed to the Plaintiffs—specifically, the fees and expenses requested by Collective Counsel are in *addition* to the amount allocated to the Plaintiffs. *See* Exhibit 2. Plaintiffs are already entitled to receive a settlement value that provides significant compensation vis-à-vis their available damages in this matter, especially considering the risks of taking nothing. *Id.* Collective Counsel maintain that the requested fee and cost amount provides reasonable compensation for the work Collective Counsel performed, the great result received by Plaintiffs, and the sizeable expenses avoided by Defendant.

Congress included a fee-shifting provision in the FLSA that mandates an award of reasonable attorney's fees and litigation costs to a prevailing employee. *See* 29 U.S.C. § 216(b); *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 639 (7th Cir. 2019) ("Notably, the [FLSA] makes an award of fees mandatory, not discretionary."). Plaintiff and those who participate in the Settlement, as prevailing parties, are entitled to recover their attorney's fees and costs for their claims for unpaid wages. 29 U.S.C. § 216(b). An attorney's fee award is justified where the legal action has produced benefits by way of a voluntary settlement. *Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) *aff'd*, 853 F.2d 931 (11th Cir. 1988). In this case, the Parties' Agreement provides that Collective Counsel is to receive $800,000.00 in fees and costs.

Collective Counsel believes that the Agreement's provision concerning fees and costs is fair and reasonable. *See* Exhibit 2. Defendant does not oppose this request. The fee arrangement agreed to by the Collective Representative and Collective Counsel is neither unconscionable nor ambiguous, it was entered into freely and knowingly (without duress or mistake), and as a matter of contract law, the fee arrangement is ordinarily enforceable according to its terms.

**6.     Conclusion**

For the foregoing reasons, Plaintiffs respectfully request approval of the Agreement. A proposed agreed order is submitted concurrently herewith as Exhibit 3.

Dated: July 17, 2025	Respectfully Submitted,

**ANDERSON ALEXANDER, PLLC**

By:	/s/ *Clif Alexander*
**Clif Alexander** (Admitted *Pro Hac Vice*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (Admitted *Pro Hac Vice*)
Texas Bar No. 24045189
austin@a2xlaw.com
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**STEPHAN ZOURAS, LLP**

By:	/s/ *Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Anna M. Ceragioli
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aceragioli@stephanzouras.cm
Firm ID: 43734

***Counsel for Plaintiffs***

12

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Central District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander